UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               :    MEMORANDUM AND ORDER
           -against-                                           :    11-cr-857-WFK-5 (WFK) (JMA)
                                                               :
JOSE CELESTINO GUILLEN-RIVAS,                                  :
                                                               :
                     Defendant.                                :
                                                               :
---------------------------------------------------------------X

**WILLIAM F. KUNTZ II, United States District Judge**

Jose Celestino Guillen-Rivas ("Defendant" or "Guillen-Rivas"), is charged with three counts in a seventeen-count indictment against Defendant and nine co-defendants. Defendant moves this Court to sever his trial from that of the other defendants, arguing that judicial economy would not be well served by consolidating trials because the crimes with which he and his co-defendants have been charged are not comparable, were not part of the same series of acts, did not occur in the same state, and do not have substantially similar facts or participants. Defendant further moves this Court to sever the three charges against him, claiming the charges are unrelated to each other and a single trial would unfairly taint the jury's evaluation of the evidence against him on the more minor offenses with which he is charged. Finally, Defendant moves this Court to suppress certain post-arrest statements on the basis that he did not knowingly, intelligently, and voluntarily waive his Fifth and Sixth Amendment rights against self-incrimination and to an attorney.

On May 31, 2013, this Court held an evidentiary hearing on Defendant's motion to suppress. At the end of that hearing, this Court denied Defendant's motion to suppress in its entirety. This decision supplements that order with the following findings of fact and

1

conclusions of law. In addition, for the reasons stated below, this Court denies Defendant's motions to sever.

## BACKGROUND AND FINDINGS OF FACT

On December 30, 2011, Defendant was indicted on charges of conspiracy to transport aliens unlawfully present in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), conspiracy to commit murder, in violation of New York Penal Law §§ 105.15 and 125.25(1), and making a false statement under oath in an immigration application, in violation of 18 U.S.C. § 1015(a). Indictment, Dkt. No. 1, at ¶¶ 31, 34, 41. Defendant was the only individual charged in the latter two counts, although the indictment alleges that both conspiracies were committed with other persons. As discussed further below, Defendant was arrested on these charges on January 5, 2012.

This Court held a suppression hearing (the "Hearing") on May 30, 2013 to determine the admissibility of statements made by Defendant to law enforcement authorities at the time of his arrest. At the Hearing, the Government presented three witnesses: FBI Supervisory Special Agent Brian Dugan ("Agent Dugan"),[1] Homeland Security Investigations ("HSI") Special Agent Michael Joseph ("Agent Joseph"), and HSI Supervisory Special Agent David Morris ("Agent Morris") (collectively, the "Agents"). Hr'g Tr. at 5:2–6, 35:9–13, 56:14–16. Defendant did not present any witnesses.

Upon consideration of the evidence in the record, including the motion, Defendant's affidavit, and the evidence presented at the Hearing, the Court finds the following facts to be true.

---

[1] At the time of the events in question, Agent Dugan was a Special Agent with the FBI. Hr'g Tr. at 5:18–25.

**Arrest of Defendant**

On January 5, 2012, Agents Dugan and Joseph, along with several other government agents, arrested Defendant in front of his residence in Fairfax, Virginia. *Id.* at 6:14–7:10, 21:20–22:11, 57:12–24. Agent Dugan informed Defendant in English that he was being arrested pursuant to an arrest warrant issued in New York. *Id.* at 7:11–18, 22:19–23:3. Defendant was handcuffed and placed in the back seat of one of the agent's vehicles for transport to HSI's office in Fairfax; Agent Dugan sat in the back seat with Defendant. *Id.* at 7:24–8:7, 24:19–25:6, 57:25–58:2.

Upon arrival at the Fairfax office, Defendant was taken directly to an interview room for processing. *Id.* at 8:8–11, 25:18–21. During processing, Agents Joseph and Dugan Defendant's handcuffs, inventoried Defendant's personal effects, and took photographs of Defendant's tattoos. *Id.* at 9:5–7, 25:22–26:5.

Defendant is a native Spanish speaker. Aff. of Jose Celestino Guillen-Rivas ("Guillen-Rivas Aff.") at ¶ 2; Hr'g Tr. at 20:12–13. Agent Morris, who received training in the Spanish language and has used Spanish in his work for over a decade, entered the room about five minutes after Agents Joseph and Dugan began processing Defendant. *Id.* at 27:7–10, 41:7–42:16. Agent Morris informed Defendant in Spanish that he was under arrest pursuant to an arrest warrant issued in New York. Hr'g Tr. at 39:12–15. Agent Morris explained to Defendant the prosecution process, specifically explaining that Defendant would be moved to the local district court in Virginia, after which he would be taken to New York to face the charges against him. *Id.* at 39:16–20, 52:2–10. Although he did not specify how long the process would take, Agent Morris told Defendant that it might take some time before Defendant would arrive in New York. *Id.* at 52:11–23.

3

Still speaking in Spanish, Agent Morris read Defendant his *Miranda* rights from a pre-printed form. *Id.* at 9:10–22, 40:22–41:6, 42:17–43:1, 53:19–22, 59:7–20. After reading each line in Spanish, Agent Morris paused and asked Defendant if he understood what had been read to him and the rights described. *Id.* at 43:13–25. Defendant consistently stated he understood. *Id.* at 44:1–45:16. Defendant did not ask any questions regarding his *Miranda* rights and did not request an interpreter. *Id.* at 39:24–40:2, 46:1–3. This Court notes that, during the Hearing, the Court asked Agent Morris to read one of the lines of the *Miranda* warnings in Spanish from the same pre-printed form and, based on this Court's knowledge of Spanish, found Agent Morris' reading to be correct and comprehensible. *Id.* at 54:5–16.

Defendant had some questions about the prosecution process following his arrest, including when he would see an attorney. *Id.* at 12:17–18, 13:22–14:10, 17:22–19:2. The agents explained Defendant would be able to see an attorney in Alexandria, Virginia, where the district court was located. *Id.* at 19:3–19, 31:1–22. If Defendant wanted to speak with an attorney immediately, then the agents would end the interview and take him to Alexandria. *Id.* at 19:14–19, 31:1–22. At no time did the agents inform Defendant that he could not see an attorney until he arrived in New York. *Id.* at 14:11–15:3, 40:3–19, 55:12–20, 62:10–14. Although Defendant asked general questions about when he would see an attorney, at no point did Defendant ask to consult with an attorney, either during the *Miranda* warnings or thereafter. *Id.* at 12:14–24, 16:17–19, 33:20–34:6, 46:18–19, 60:16–61:17.

Defendant indicated he was willing to speak with the agents without an attorney present, and he signed a waiver of his *Miranda* rights on the same pre-printed form from which Agent Morris had read Defendant's rights to him. Hr'g Gov. 1A; Hr'g Tr. at 10:4–19, 59:18–22. Agents Dugan and Joseph signed the waiver form as witnesses. Hr'g Ex. 1A; Hr'g Tr. at 10:1–

14, 59:23–60:1. Agent Morris then left the interview room. Hr'g Tr. at 13:4–8, 47:18–21, 60:14–15.

None of the agents threatened Defendant to induce him to speak with them. *Id.* at 15:11–24, 47:1–13. None of the agents made any promises to convince Defendant to speak with them. *Id.* at 15:13–24, 47:3–11, 61:22–24. None of the agents suggested to Defendant that it would be in his best interests to speak with them. *Id.* at 15:15–24, 47:5–17, 52:24–53:10, 61:25–62:5.

Agents Dugan and Joseph questioned Defendant in English for less than forty-five minutes. *Id.* at 16:24–25, 63:6–7. Defendant did not indicate that he had any difficulty understanding the agents, nor did he ask for an interpreter. *Id.* at 13:11–17, 16:6–16, 61:5–15. Defendant's answers were responsive and demonstrated he understood the questions being asked of him. *Id.* at 16:12–13, 61:8–12. After the agents finished their questioning, Defendant was transported to Alexandria. *Id.* at 63:18–20.

## ANALYSIS

### I. Suppression

Defendant moves to suppress his post-arrest statements on the grounds that (a) he did not understand that he had an immediate right to an attorney and (b) he was improperly coerced into making statements by the agents. *See generally* Def.'s Br. In an affidavit to this Court, Defendant stated one of the agents urged him to sign a waiver of his *Miranda* rights, representing "that it would be to [Defendant's] benefit if [Defendant] spoke to him right away and answered his questions." Guillen-Rivas Aff. at ¶ 5. Defendant further contends the Agents did not tell him he could have immediate access to an attorney in Virginia and that, to the contrary, one of the agents told Defendant that an attorney would not be assigned to represent Defendant until he arrived in New York, which might take as long as three weeks. *Id.* at ¶ 6. By the affidavit alone,

5

Defendant claims he did not understand that he was entitled to speak with an attorney right away and to have an attorney present with him during any questioning by the agents. *Id.* Defendant did not testify at the suppression hearing and was not subject to cross-examination.

Under the Sixth Amendment, a criminal defendant is "entitled to counsel 'at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.'" *United States v. Reed*, No. 11 Cr. 487, 2012 WL 2053758, at *2 (S.D.N.Y. June 6, 2012) (Sullivan, J.) (quoting *United States v. Wade*, 388 U.S. 218, 226 (1967)); *see also Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) ("[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings."). Interrogation by government agents qualifies as such a stage. *Montejo*, 556 U.S. at 786. However, "the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Id.* (citing, *inter alia*, *Patterson v. Illinois*, 487 U.S. 285, 292, n.4 (1988)). Specifically, the Supreme Court has stated:

> The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment.

*Id.* (citation omitted).

As for the analogous Fifth Amendment right to counsel, "the Supreme Court made clear that the prosecution may not use statements made by a suspect under custodial interrogation unless the suspect (1) has been apprised of his Fifth Amendment rights, and (2) knowingly, intelligently, and voluntarily waives those rights." *United States v. Oehne*, 698 F.3d 119, 122 (2d Cir. 2012) (citing *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966)). "The Government

6

bears the burden of proving by a preponderance of evidence" that these requirements were satisfied. *United States v. Murphy*, 703 F.3d 182, 192 (2d Cir. 2012) (citing, *inter alia*, *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2261 (2010)). A suspect may invoke the right to counsel by making "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation.*" *Oehne*, 698 F.3d at 122–23 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). "If an accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Id.* at 123 (quoting *Berghuis*, 130 S. Ct. at 2259–60).

Here, although Defendant submitted an affidavit in which he stated he did not understand that he had an immediate right to an attorney and that he was improperly coerced into making statements by the agents, the Court rejects his claims as not credible in the face of consistent, detailed, and credible live testimony from Agents Dugan, Joseph, and Morris. *See United States v. Polanco*, 37 F. Supp. 2d 262, 264 n.4 (S.D.N.Y. 1999) (Rakoff, J.) ("[T]he self-serving affidavit of the moving defendant is usually disregarded if he declines to testify at the [suppression] hearing."). All three Agents testified that Defendant understood his *Miranda* rights and willingly waived those rights without any threats, promises, or coercion. As noted above, Agent Morris informed Defendant of his *Miranda* rights in Spanish, Defendant's native language. Moreover, Agent Morris asked Defendant after each line whether Defendant understood what had been read to him and the rights described. The form from which Agent Morris read specifically states that the Defendant has a "right to consult an attorney before making any statement or answering any questions." Hr'g Ex. 1B. The form further states Defendant has "the right to have an attorney present with you during questioning." *Id.* These

7

statements are clear and unambiguous, and Defendant stated he understood these rights and signed a waiver of those rights in Spanish. Finally, each agent credibly and confidently affirmed that none of the agents threatened Defendant, made any promises to Defendant, or told Defendant that it would be in his interest to speak with them immediately. Based on all of this evidence, this Court finds Defendant was apprised of his Fifth Amendment rights and knowingly, intelligently, and voluntarily waived those rights. Therefore, Defendant's motion to suppress is denied.

## II. Joinder

### A. Joinder is Proper Under Rule 8 of the Federal Rules of Criminal Procedure

Rule 8 of the Federal Rules of Criminal Procedure ("Rule 8") governs joinder of offenses and defendants in a criminal action. That rule provides:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8. Although Rule 8 provides separate standards for determining the propriety of joining offenses and defendants, where an indictment joins both offenses and defendants, "courts should apply Rule 8(b) to determine whether joinder is proper."[2] *United States v. Nekritin*, No.

---

[2] Despite this general rule, the Second Circuit has indicated some uncertainty as to whether Rule 8(a) or 8(b) should be applied where a defendant seeks to sever a count in which he or she is the only defendant charged. *United States v. Shellef*, 507 F.3d 82, 97 n. 12 (2d Cir. 2007). However, because Rule 8(b) is the more restrictive joinder provision, a determination that joinder is appropriate under Rule 8(b) indicates that joinder is permissible under Rule 8(a) as well. *See id.*

8

10-cr-491(S-1), 2011 WL 1674799, at *2 (E.D.N.Y. May 3, 2011) (Matsumoto, J.) (citing *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988); *United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir. 1989))).

Joinder is proper under Rule 8(b) "where two or more persons' criminal acts are 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'" *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990)). In evaluating whether joinder is appropriate, a court should "apply a 'commonsense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to [any or all] of the defendants resulting from the joinder." *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007).

Joinder is particularly appropriate where defendants have been charged with a common conspiracy or related conspiracies. A conspiracy constitutes participation in "a common plan or scheme." *See United States v. Nicolo*, 421 F. App'x 57, 64–65 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 338 (2011). For that reason, "[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b)." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988); *see also United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) ("The mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense.") (citation omitted). Further, joinder of more than one conspiracy is appropriate, even where the members of each conspiracy have not been charged with participating in one overarching conspiracy, provided the defendants participated in the same act or transaction or series of acts or transactions. *Rittweger*, 524 F.3d at 178; *see also*

*Attanasio*, 870 F.2d at 815 (upholding joinder of defendants involved in separate conspiracies on the grounds that the conspiracies shared a common purpose and there was "an overlap of participants and acts").

In this case, the indictment alleges Guillen-Rivas and his nine co-defendants were members of La Mara Salvatrucha, an international street gang also known as "MS-13." Indictment at ¶ 2. According to the indictment, MS-13 constitutes an enterprise under the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961(4). *Id.* at ¶ 3. The alleged purposes of this enterprise are to promote and enhance the prestige, reputation, and position of the enterprise with respect to rival criminal organizations; to preserve and protect the power, territory, and criminal ventures of the enterprise; to keep victims and rivals in fear of the enterprise and its members and associates; and to enrich the members and associates of the enterprise through criminal activities. *Id.* at ¶ 4. To achieve these aims, members and associates of MS-13 allegedly have engaged in narcotics trafficking and acts of violence, including murder, attempted murder, robbery, and assault. *Id.* at ¶¶ 1, 4, 5.

Nearly all of the counts in the indictment charge Defendant and his co-defendants with offenses undertaken to maintain and increase either the position of MS-13 relative to other gangs or their individuals positions within the organization. For example, Count Thirteen charges Guillen-Rivas with conspiring to murder an individual "for the purpose of maintaining and increasing position in the MS-13." *Id.* at ¶ 35. Similarly, Count Fourteen charges co-defendants Kevin Cardona, Carlos Hernandez, Abraham Iraheta, Alex Machado, and Christian Merino with intentionally conspiring to murder a different individual "for the purpose of gaining entrance into the MS-13 and increasing position in the MS-13." *Id.* at ¶ 37. Count Three charges co-defendants Christian Merino, Alex Machado, and Wilber Baires with conspiring to assault

members of the rival Bloods gang "for the purpose of maintaining and increasing position in the MS-13." *Id.* at ¶ 17. Likewise, Count Four charges co-defendants Jose Barrera, Abraham Iraheta, and Christian Merino with conspiring to murder members of the rival Original Flushing Crew Gang "for the purpose of maintaining and increasing position in the MS-13." *Id.* at ¶ 19.

Because these crimes allegedly were carried out for the purpose of maintaining and increasing the position of MS-13 or the defendants' own positions within the organization, the Government has stated it will likely produce extensive evidence about the MS-13 gang during the trial of this action. *See* Gov. Br. at 38. In particular, the Government has stated it expects to present at trial evidence regarding MS-13's rules, organizational structure, interstate operations, and criminal activities. *Id.* Based on the allegations in the indictment, evidence regarding MS-13's rules and customs regarding initiation and rank, such as what actions are required to maintain or increase an individual's position in the organization, is also likely to be presented. *See* Indictment at ¶¶ 17, 35, 37; *see also United States v. Spicer*, No. 10-CR-657, 2013 WL 871952, at *3 (E.D.N.Y. Mar. 7, 2013) (Johnson, J.) (holding that evidence of a racketeering enterprise's organization and mode of operation, including its use of violence to further narcotics trafficking and intimidate rivals, was admissible against an individual defendant as acts in furtherance of a conspiracy). Consequently, much of the evidence the Government states it intends to submit against Guillen-Rivas and his co-defendants regarding MS-13's rules, customs, structure, interstate operations, and criminal activities is likely to be the same, and trying Guillen-Rivas with his co-defendants would result in substantial efficiencies by preventing the Court from having to repeatedly assess the same evidence presented by the Government at multiple trials. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993); *Spicer*, 2013 WL 871952, at *3.

11

Finally, this Court finds it significant that Guillen-Rivas and his co-defendants have been charged with multiple counts of conspiracy. Specifically, Guillen-Rivas is charged with conspiring with MS-13 members (1) to harbor and transport MS-13 gang members who were in the United States illegally and (2) to murder a gang member suspected of cooperating with law enforcement in order to maintain and increase his position in MS-13. Indictment at ¶¶ 31, 35; Gov. Br. at 38. The other counts in the indictment similarly charge the defendants with participating in MS-13 conspiracies to commit acts of violence with other MS-13 members to advance the interests of MS-13 and maintain and increase their own positions within the organization. *See* Indictment. These alleged conspiracies are alleged by the Government to have formed part of a common scheme to promote and enhance the prestige, reputation, and position of the enterprise with respect to rival criminal organizations; to preserve and protect the power, territory, and criminal ventures of the enterprise; and to keep victims and rivals in fear of the enterprise and its members and associates. Because the alleged conspiracies allegedly shared a common aim and many of the participants in the conspiracies overlapped, joinder of these conspiracies is proper. *Rittweger*, 524 F.3d at 177 (joinder of two conspiracies was proper where the conspiracies were part of a common plan or scheme and some, though not all, participants in the conspiracies overlapped); *United States v. Reinhold*, 994 F. Supp. 194, 199–200 (S.D.N.Y. 1998) (Schwartz, J.) (joinder of multiple defendants who had participated in two conspiracies was proper because they shared a "common aim or goal" and were part of a "common plan or scheme"); *Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (same). The fact that Guillen-Rivas may not have participated in each conspiracy charged does not alter that conclusion. *See, e.g., United States v. Cervone*, 907 F.2d 332, 340–41 (2d Cir. 1990) (defendant who was named in only one

count of a 102–count indictment against eighteen defendants was properly joined under Rule 8(b)).

Severing the trial of Guillen-Rivas from that of his co-defendants would be inefficient because it would require the Court to consider proof of the same or overlapping conspiracies twice. For example, Count Eleven charges Guillen-Rivas and co-defendants Rudy Guembes-Lorena and Christian Merino with harboring and transporting MS-13 gang members who were in the United States illegally. Indictment at ¶ 31; Gov. Br. at 38. Because these defendants are charged with the same conspiracy, "all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *United States v. Aref*, 285 F. App'x 784, 791 (2d Cir. 2008) (quoting *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998)). Consequently, the proof against Guillen-Rivas regarding this offense is likely to be the same as that against Guembes-Lorena and Merino. It would be inefficient to sever Guillen-Rivas' trial from that of Guembes-Lorena and Merino and thereby require the Court to consider proof of the same conspiracy twice. *See Nekritin*, 2011 WL 1674799, at *3; *see also United States v. Stewart*, 433 F.3d 273, 314 (2d Cir. 2006) (finding joinder proper because the common factual elements of the charges and evidence offered to establish them would have required duplicate trials); *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (joinder is proper where, "even if the district court had tried the[ ] two defendants separately, the evidence at one trial would essentially [have] duplicate[d] the evidence at the other"). Similarly, Count Thirteen charges Guillen-Rivas with conspiring with members of the MS-13 Flushing clique of co-defendants Jose Barrera and Abraham Iraheta to kill a gang member suspected of cooperating with law enforcement, in order to maintain and increase their positions in MS-13. Indictment at ¶ 35; Gov. Br. at 38. Although Barrera and Iraheta have not

been charged in Count Thirteen, much of the proof for this count would undoubtedly overlap with proof for the charges against Barrera and Iraheta in other counts in the indictment. Gov. Br. at 38. For example, the Government has stated its intent to call some of the same witnesses to testify against the three defendants, who were captured speaking on the same wiretap. *Id.* at 39. Because the proof for the charges against Guillen-Rivas substantially overlaps with the proof of the charges against his co-defendants, joinder is appropriate. *See, e.g., United States v. Bennett*, 978 F.2d 745 (D.C. Cir. 1992) (affirming joinder of three defendants, two of whom were charged with one offense and one of whom was charged with a different offense, where there was a "substantial overlap of issues and evidence"); *United States v. Defreitas*, 701 F. Supp. 2d 309, 316 (E.D.N.Y. 2010) (Irizarry, J.) (permitting joinder of four defendants where there was a "substantial overlap between the witnesses and evidence presented against" them, even though two defendants were charged with an additional offense).

Defendant also objects to joinder of Count Seventeen, which charges him with making a false statement under oath in an immigration application, in violation of 18 U.S.C. § 1015(a), because the offense is "dissimilar to the others with which Guillen-Rivas is charged." Def.'s Br. at 5. The proper test, however, is whether the offenses are part of "the same series of acts or transactions." Fed. R. Crim. P. 8(b). In this case, Guillen-Rivas could not "have committed the [other] offenses charged without actually being present in the United States," *United States v. Brown*, 744 F. Supp. 558, 563 (S.D.N.Y. 1990) (Leisure, J.), and Guillen-Rivas' false statement in his application for temporary protected status helped to secure his continued presence in the United States. Consequently, these counts are sufficiently related to permit joinder under Rule 8. *Id.*; *see also United States v. Estrella*, No. S1 01 CR. 984, 2002 WL 655202, at *1–2 (S.D.N.Y.

Apr. 22, 2002) (Keenan, J.); *United States v. Espinal-Mejia*, 852 F. Supp. 3, 5 (N.D.N.Y. 1994) (McAvoy, C.J.).

**B. Joinder Would Not Result in Severe Prejudice**

Even where joinder is proper, a court may sever the offenses or defendants pursuant to Rule 14 of the Federal Rules of Criminal Procedure ("Rule 14") if the court finds that a joint trial would prejudice a defendant or the government. Fed. R. Crim. P. 14(a). A defendant seeking severance under Rule 14 bears an "extremely difficult burden of proving . . . that the prejudice would be so great as to deprive him of his right to a fair trial." *United States v. Bellomo*, 954 F. Supp. 630, 649 (S.D.N.Y. 1997) (Kaplan, J.) (quoting *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989)) (quotation marks omitted); *see also Zafiro*, 506 U.S. at 539 ("[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."). This heavy burden reflects the judicial preference for joint trials of defendants who have been indicted together, since joint trials generally "promote efficiency" and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537 (quotation marks omitted); *United States v. James*, 712 F.3d 79, 104 (2d Cir. 2013) ("Considerations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together, and joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy.") (internal brackets and quotation marks omitted).

The determination of whether there is a risk of severe prejudice is committed to the sound discretion of the district court and must be evaluated on a case by case basis. *United States v. Barret*, 824 F. Supp. 2d 419, 433 (E.D.N.Y. 2011) (Matsumoto, J.). In exercising this discretion,

15

a court should consider: (i) the number of defendants and counts; (ii) the complexity of the indictment; (iii) the estimated length of trial; (iv) disparities in the amount or type of proof offered against the defendants; (v) disparities in the degrees of involvement by defendants in the overall scheme; (vi) possible conflict between defense theories or strategies; (vii) potential prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant; and (viii) potential prejudice if exculpatory evidence were unavailable in a joint trial, but would have been available to a defendant tried alone. *See, e.g., Zafiro*, 506 U.S. at 539; *United States v. Santiago*, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001) (Marrero, J.); *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987) (Weinstein, C.J.). Even where the risk of prejudice is high, a court may find that measures short of severance, such as the use of limiting instructions, are sufficient to cure that risk. *Zafiro*, 506 U.S. at 539.

None of these factors demonstrate that Guillen-Rivas will be "so severely prejudiced by a joint trial that it would in effect deny him a fair trial." *United States v. An–Lo*, 851 F.2d 547, 556 (2d Cir. 1988). First, the indictment in this case charges ten individuals with a total of seventeen counts. The Second Circuit has upheld joinder in cases involving substantially more defendants and counts. *See, e.g., Cervone*, 907 F.2d at 341–42 (separate trials were not required under Rule 14 even though eighteen defendants had been charged in a 102–count indictment). Second, although the trial in this case will involve a significant amount of evidence, it will not be complex. *See United States v. Casamento*, 887 F.2d 1141, 1150 (2d Cir. 1989) (giving examples of "complex cases" including "a complex anti-trust case involving abstruse economic theories or an employment discrimination case involving technical statistical evidence and formulae"). Third, trial in this action is currently anticipated to last only two to four weeks. *See* Transcript of Oral Argument, Dkt. No. 142, at 43:1–44:8. Fourth, although Guillen-Rivas is charged with

fewer offenses than his co-defendants, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (quotation marks omitted). Even "joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993); *see also United States v. Rosa*, 11 F.3d 315, 341–42 (2d Cir. 1993) (affirming denial of severance for narcotics conspirators not charged with acts of violence and holding that violence by co-conspirators was admissible as proof of the conspiracy's *modus operandi*). It is true that, in some cases, the sheer volume and magnitude of the evidence against one defendant may so dwarf the proof presented against a co-defendant that severance is required. *Spinelli*, 352 F.3d at 55. But this case—in which Guillen-Rivas is charged with conspiring with MS-13 members to (1) harbor and transport MS-13 gang members who were in the United States illegally and (2) murder a gang member suspected of cooperating with law enforcement, in order to maintain and increase his position in MS-13—is not such as case. Fifth, while some evidence may be introduced at trial that is not admissible against Guillen-Rivas, "the fact that evidence may be admissible against one defendant but not against another does not necessarily require a severance." *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983). In this case, any prejudice could and would be counteracted by an appropriate limiting instruction. *See Zafiro*, 506 U.S. at 539 ("[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."); *United States v. Miller,* 116 F.3d 641, 679 (2d Cir.1997) (noting that potential prejudice may be remedied through clear judicial instructions). Finally, Guillen-Rivas has not indicated any possible conflict between defense theories or strategies or asserted that exculpatory evidence would be unavailable in a joint trial. Consequently, this Court concludes

that a joint trial would not result in severe prejudice to Guillen-Rivas. Defendant's motions to sever are denied.

## CONCLUSION

For the foregoing reasons, Defendant's motions to suppress and sever are DENIED in their entirety.

**SO ORDERED**

Dated: Brooklyn, New York
June 19, 2013

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge